**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**EL PASO DIVISION**

| | | |
|---|---|---|
| **SANDRA GRANADOS,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | **NO.  EP-19-CV-300-MAT** |
| | § | |
| **ANDREW SAUL, COMMISSIONER OF** | § | |
| **THE SOCIAL SECURITY** | § | |
| **ADMINISTRATION,** | § | |
| | § | |
| **Defendant.** | § | |

## <u>MEMORANDUM OPINION AND ORDER</u>

This is a civil action seeking judicial review of an administrative decision pursuant to 42 U.S.C. § 405(g). Plaintiff Sandra Granados ("Plaintiff") appeals from the decision of the Commissioner of the Social Security Administration (the "Commissioner") denying her applications for a period of disability and disability insurance benefits ("DIB") under Title II of the Social Security Act (the "Act") and her application for supplemental security income ("SSI") under Title XVI of the Act. (Pl.'s Compl., ECF No. 6). The parties consented to the transfer of the case to this Court for determination and entry of judgment. *See* (ECF Nos. 15 & 18); 28 U.S.C. § 636(c); Local Court Rule CV-72. For the reasons set forth below, the Commissioner's decision will be **AFFIRMED**.

## I.     BACKGROUND

Plaintiff was fifty-five years old at the time the Administrative Law Judge ("ALJ") issued his decision on September 12, 2018. (R. 97, 328).[1] Her relevant prior job experience included work

---

[1] Reference to the record of administrative proceedings is designated by (R. [page number(s)]).

as a data entry clerk and a registration clerk. (R. 126). On September 30, 2016, Plaintiff filed an application for a period of disability and DIB, and an application for supplemental security income in which she alleged disability beginning on April 25, 2013, due to: "carpal tunnel," stroke, fibromyalgia, "blood disorder MTHFR," high cholesterol, hypertension, osteoarthritis, osteoporosis, sleep apnea, cerebrovascular injury, chronic severe headaches, meningioma, asthma, vision loss, and thyroid problems. (R. 328–34, 335–40, 157–58). After her applications were denied initially (R. 189, 190) and upon reconsideration (R. 227, 228), Plaintiff requested a hearing by an ALJ. (R. 251).

On May 3, 2018, a hearing was conducted before the ALJ. (R. 104–31). At the hearing, Plaintiff moved to amend her alleged onset date of disability to May 14, 2015, which the ALJ granted. (R. 107–08). On September 12, 2018, the ALJ issued a written decision denying benefits based on his conclusion at step four of the five-step sequential evaluation process that Plaintiff was capable of performing past relevant work as a data entry clerk. (R. 95–97). Plaintiff sought review of the ALJ's decision by the Appeals Council. *See* (R. 323). On August 6, 2019, the Appeals Council granted the request for review finding that the ALJ's decision was not supported by substantial evidence. (R. 323).

The Appeals Council sent a notice to Plaintiff of its intention to make a decision that Plaintiff was not disabled under the Social Security Act. (R. 324). Specifically, the Appeals Council stated it proposed to adopt the ALJ's findings as to steps one through four of the five step-sequential evaluation process, as set forth in the ALJ's decision. (R. 324). However, finding that the ALJ did not address the medical opinion of Sanlly Perez-Ceballos, M.D. in accordance with the Social Security Regulations, the Appeals Council stated its intention to give the opinion of Dr. Perez-Ceballos little weight because it was not supported by Plaintiff's treatment history and daily

activities. (R. 324–25). The Appeals Council gave Plaintiff thirty days to provide a statement about the facts or law in her case or to provide additional evidence that is "new, material, and relates to the period on or before the date of the hearing decision." (R. 323, 325). The date of the ALJ's decision was September 12, 2018. (R. 97, 328).

Plaintiff did not submit a statement about the facts or law, but she did provide additional evidence in the form of additional medical records. *See* (R. 4). On October 1, 2019, noting that the additional medical records did not relate to the time period at issue, the Appeals Council proceeded as it had previously stated, adopting the findings of the ALJ in steps one through four of the sequential evaluation process; assigning little weight to the opinion of Dr. Perez-Ceballos; and determining that Plaintiff was not disabled under the Social Security Act through the date of the ALJ's decision. (R. 4–7). Thus, the Appeals Council's decision was the final decision of the Commissioner in Plaintiff's case. (R. 1).

On October 17, 2019, Plaintiff filed a motion in this Court to proceed with this case in forma pauperis, which the Court granted. (ECF Nos. 2 & 5). Plaintiff's Complaint was then filed on October 22, 2019. (ECF No. 6). In this appeal, Plaintiff seeks the reversal of the Commissioner's decision and remand of her case, arguing that the ALJ erred by: (1) failing to consider Plaintiff's "chronic back pain, tricompartmental osteoarthritis of the bilateral knees and mild arthritis of the bilateral hips;" (2) dismissing Plaintiff's major depressive disorder on an improper basis; and (3) mischaracterizing Plaintiff's degenerative disc disease as "only 'mild.'" (Pl.'s Br., ECF No. 20, at 3–8).

## II.     LAW AND ANALYSIS

### A.  STANDARD OF REVIEW

The Court's review is limited to a determination of whether the Commissioner's final

decision "is supported by substantial evidence on the record as a whole and whether the [Commissioner] applied the proper legal standard[s]." *Myers v. Apfel*, 238 F.3d 617, 619 (5th Cir. 2001) (citing *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994)) (internal quotation marks omitted). "Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains 'sufficien[t] evidence' to support the agency's factual determinations." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (quoting *Consol. Edison Co. v. Nat'l Labor Relations Bd.*, 305 U.S. 197, 229 (1938)) (alteration in original). Substantial evidence "means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id.* (quoting *Consol. Edison Co.*, 305 U.S. at 229). It is more than a scintilla of evidence, but less than a preponderance. *Ripley v. Chater*, 67 F.3d 552, 555 (5th Cir. 1995) (citing *Spellman v. Shalala*, 1 F.3d 357, 360 (5th Cir. 1993)). A finding of "no substantial evidence" will be made only where there is a "conspicuous absence of credible choices" or "no contrary medical evidence." *Abshire v. Bowen*, 848 F.2d 638, 640 (5th Cir. 1988) (quoting *Hames v. Heckler*, 707 F.2d 162, 164 (5th Cir. 1983)) (internal quotation marks omitted).

In determining whether there is substantial evidence to support the findings of the Commissioner, the Court may not reweigh the evidence or try the issues de novo. *Newton v. Apfel*, 209 F.3d 448, 452 (5th Cir. 2000). The Court may not substitute its own judgment "even if the evidence preponderates against the [Commissioner's] decision." *Harrell v. Bowen*, 862 F.2d 471, 475 (5th Cir. 1988) (citation omitted). "Conflicts in evidence are for the [Commissioner] and not the courts to resolve." *Spellman*, 1 F.3d at 360 (quoting *Selders v. Sullivan*, 914 F.2d 614, 617 (5th Cir. 1990)) (internal quotation marks omitted). If the Commissioner's findings are supported by substantial evidence, "they are conclusive and must be affirmed." *Id.* (citations omitted). However, "[t]he ALJ's decision must stand or fall with the reasons set forth in the ALJ's decision, as adopted

4

by the Appeals Council." *Newton*, 209 F.3d at 455.

    B.   FIVE-STEP SEQUENTIAL EVALUATION PROCESS

       Under the Social Security Act, "disability" means, in relevant part, the "inability to engage

in any substantial gainful activity by reason of any medically determinable physical or mental

impairment which can be expected to result in death or which has lasted or can be expected to last

for a continuous period of not less than 12 months . . . ." 42 U.S.C. §§ 423(d)(1)(A) &

1382c(a)(3)(A). This means that:

> An individual shall be determined to be under a disability only if his
> physical or mental impairment or impairments are of such severity
> that he is not only unable to do his previous work but cannot,
> considering his age, education, and work experience, engage in any
> other kind of substantial gainful work which exists in the national
> economy. . . .

*Id.* at §§ 423(d)(2)(A) & 1382c(a)(3)(B).

       The Social Security Administration Regulations (the "Regulations") prescribe a "five-step

sequential evaluation process" to determine whether a claimant is disabled. 20 C.F.R.

§§ 404.1520(a)(1) & 416.920(a)(1). If at any step of the process the ALJ finds that the claimant is

either disabled or not disabled, the ALJ will make his determination as to disability and will not

continue with a consideration of the remaining steps. *Id.* at §§ 404.1520(a)(4) & 416.920(a)(4).

       At the first step, the ALJ determines whether the claimant is engaged in substantial gainful

activity. *Id.* at §§ 404.1520(a)(4)(i) & 416.920(a)(4)(i). If so, the ALJ will find the claimant is not

disabled and will not continue to step two. *Id.*

       At the second step, the ALJ considers the medical severity of the claimant's impairment(s).

*Id.* at §§ 404.1520(a)(4)(ii) & 416.920(a)(4)(ii). An impairment or combination of impairments is

severe within the meaning of the Regulations if it "significantly limits" an individual's "physical

or mental ability to do basic work activities." *Id.* at §§ 404.1520(c) & 416.920(c). If the ALJ

determines that the claimant does not have a severe medically determinable physical or mental impairment or combination of impairments that meet the duration requirement, then the ALJ will find that the claimant is not disabled and will not continue to step three. 20 C.F.R. §§ 404.1520(a)(4)(ii) & 416.920(a)(4)(ii).

At the third step, the ALJ also considers the medical severity of the claimant's impairment(s), specifically whether the impairment(s) meets the duration requirement and "meets or equals one of [the] listings in appendix 1 of this subpart . . . ." *Id.* at §§ 404.1520(a)(4)(iii) & 416.920(a)(4)(iii). If so, the claimant will be found to be disabled, and the ALJ will not continue to step four. *Id.*

Before proceeding to the fourth step, the ALJ will make a finding as to the claimant's residual functional capacity ("RFC"), "based on all the relevant medical and other evidence" in the administrative record. *Id.* at §§ 404.1520(e) & 416.920(e). A claimant's RFC is the most she can still do despite her physical and mental limitations that affect what she can do in a work setting. *Id.* at §§ 404.1545(a)(1) & 416.945(a)(1). When assessing the RFC, the ALJ will consider *all* of a claimant's medically determinable impairments, not just ones that the ALJ determines are severe. *Id.* at §§ 404.1545(a)(2) & 416.945(a)(2).

At step four of the five-step sequential evaluation process, the ALJ considers the RFC assessment and the claimant's past relevant work. *Id.* at §§ 404.1520(a)(4)(iv) & 416.920(a)(4)(iv). If the ALJ determines that, considering the RFC, the claimant can still do her past relevant work, then the ALJ will find that the claimant is not disabled and will not continue to step five. *Id.* Finally, at step five, the ALJ considers the claimant's RFC, age, education, and work experience to determine whether the claimant can adjust to other work. *Id.* at §§ 404.1520(a)(4)(v) & 416.920(a)(4)(v). If the ALJ finds that the claimant cannot, then the ALJ will find that the claimant

is disabled. *Id.*

C.  THE COMMISSIONER'S DECISION

     *1.  The ALJ's written decision*

In his written decision, the ALJ analyzed Plaintiff's applications for a period of disability and DIB and SSI using the five-step sequential evaluation process set forth in the Regulations. (R. 83–97). Before beginning the evaluation process, the ALJ found that Plaintiff "meets the insured status requirements of the Social Security Act through December 31, 2018." (R. 86). At step one of the five-step sequential evaluation process, the ALJ found that Plaintiff had not engaged in substantial gainful activity since May 14, 2015, the amended alleged onset date of disability. (R. 86). Proceeding to step two, the ALJ found that Plaintiff had the following severe impairments[2]: "fibromyalgia/arthralgia, cervical and lumbar degenerative disc disease (severe in combination only), mild-to-moderate left carpal tunnel syndrome, and major depressive disorder . . . ." (R. 86). At step three, the ALJ concluded that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in the Regulations. (R. 87).

Before proceeding to step four, the ALJ found that Plaintiff had the RFC to perform light work as defined by the Regulations[3] with the following additional limitations:

---

[2] The ALJ also determined that the following impairments were not severe: "renal lesion/hemangioma with hepatic steatosis, hypertension, hyperlipidemia, migraines, or history of cerebrovascular accident and right-sided carpal tunnel syndrome." (R. 86). The ALJ also determined that restless leg syndrome, osteoporosis, asthma, and patent foramen ovale were not medically determinable under the evidence of record. (R. 86).

[3] According to the Regulations:

        Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do

7

> the claimant cannot climb ladders, ropes, or scaffolds; she can occasionally stoop, crouch, balance, kneel, crawl, and climb ramps and stairs; she can frequently handle with the (helper) left upper extremity; she can understand, remember, and carry out detailed but not complex job instructions and work-related tasks; and she can occasionally interact with the general public.

(R. 90). At step four, considering Plaintiff's RFC and her past relevant work, the ALJ determined that Plaintiff was capable of performing her past relevant work as a data entry clerk. (R. 95–96).

Accordingly, the ALJ determined that Plaintiff was not under a disability between the amended alleged onset date of disability and the date of his decision and, therefore, did not proceed to step five of the five-step sequential evaluation process. (R. 97).

### 2. The Appeals Council's decision

The Appeals Council adopted the ALJ's "statements regarding the pertinent provisions of the Social Security Act, Social Security Administration Regulations, Social Security Rulings and Acquiescence Rulings; the issues in the case, and the evidentiary facts, as applicable." (R. 4). The Appeals Council also adopted the ALJ's "findings or conclusions regarding whether the claimant is disabled, except [it] assign[ed] little weight to the opinion of Dr. Perez-Ceballos, M.D." (R. 4). The Appeals Council then specifically considered the medical opinion of Sanlly Perez-Ceballos, M.D., "as required by 20 CFR 404.1527(d), 416.927(d)."[4] (R. 5–6). The Appeals Council determined that Dr. Perez-Ceballos's opinion indicating a less-than-sedentary RFC was not supported by Plaintiff's treatment history nor Plaintiff's daily activities. (R. 5–6). Accordingly, for the reasons set forth in the ALJ's decision as adopted by the Appeals Council and as stated in the

---

sedentary work, unless there are additional limiting factors such as a loss of fine dexterity or inability to sit for long periods of time.
20 C.F.R. §§ 404.1567(b) & 416.967(b).

[4] The Appeals Council cited subsections d of 20 C.F.R. §§ 404.1527 and 416.927, which address medical source opinions on issues reserved to the Commissioner. Presumably the Appeals Council intended to cite 20 C.F.R. §§ 404.1527(c) and 416.927(c), which list the factors that are to be considered when evaluating a medical opinion. In prior versions of these Regulations, these factors were located at subsection d. *See* fn 5, *infra*.

Appeals Council's decision, the Appeals Council determined that Plaintiff was not disabled from the amended alleged onset date of disability through the date of the ALJ's decision, September 12, 2018. (R. 6–7).

D.  WHETHER THE ALJ ERRED IN FAILING TO CONSIDER PLAINTIFF'S CHRONIC BACK PAIN, TRICOMPARTMENTAL OSTEOARTHRITIS OF THE BILATERAL KNEES, AND MILD ARTHRITIS OF THE BILATERAL HIPS

Plaintiff argues that the ALJ "completely disregarded the chronic pain that severely impairs [Plaintiff's] work capacity" and that the "objective medical evidence establishes that [Plaintiff] is fully disabled and cannot lift more than 10 pounds, crouch, reach overhead bilaterally and cannot carry out detailed instructions due to her bilateral extremity pain, cervical and lumbar disk degeneration and major depressive disorder." (Pl.'s Br., ECF No. 20, at 3). Within this issue, Plaintiff asserts two points of error, discussed separately below.

*1.  Whether the ALJ disregarded medical evidence of comorbidities*

First, Plaintiff argues that the ALJ disregarded her medical comorbidities. (Pl.'s Br., ECF No. 20, at 3). In support, Plaintiff cites: (1) a medical examination of the lumbar spine conducted by Dr. Brian August in August 2015 that "reflects [Plaintiff's] pain management," (R. 1308); (2) a notation of Plaintiff's history of chronic low back pain by "Dr. [Sonaris] Molina Paredes, in consultation with neurologist Dr. Cowens," on January 23, 2018, (R. 1676); and (3) the medical records of a July 12, 2019 visit to Dr. Lisa Kafchinski who noted "multiple medical comorbidities including fibromyalgia, cervical spine pain, hypertension, hypercholesterolemia, poor balance, and left lower extremity weakness," "evidence of tricompartmental osteoarthritis of bilateral knees and mild arthritis of the bilateral hips," Plaintiff's medications and treatments, and Plaintiff's diagnoses of hand numbness and chronic back pain (R. 22–26). (Pl.'s Br., ECF No. 20, at 3–4).

In response, the Commissioner argues that the ALJ did not err by not considering the medical record evidence of Dr. Kafchinski because the date of the examination was after the ALJ issued his decision. (Comm'r's Br., ECF No. 22, at 4). The Commissioner also asserts that the Appeals Council was correct in not considering the evidence because it did not "relate to the period at issue, which ended on the date of the ALJ's decision." *Id.* The Commissioner further argues that even if the medical record evidence from the examination by Dr. Kafchinski related to the period at issue, it would not have changed the ALJ's decision because: (1) it contained Plaintiff's subjective complaints of pain, and (2) showed "full strength in both legs, and a normal range of motion in the knees and hips." *Id.* at 4–5 (citing R. 25).

To the extent that Plaintiff asserts that the ALJ erred in his September 12, 2018 written decision by not considering the medical record evidence of Plaintiff's July 12, 2019 office visit to Dr. Kafchinski, the Court finds that the ALJ did not err because he could not have considered evidence that was not in existence at the time of his written decision. *See* (R. 97) (written decision of the ALJ, dated September 12, 2018); (R. 22–27) (office visit to Dr. Kafchinski on July 12, 2019). Plaintiff submitted this evidence to the Appeals Council, which then declined to consider the evidence as it was outside the relevant time period. (R. 4). That is, the medical record evidence of Plaintiff's office visit to Dr. Kafchinski on July 12, 2019, did not "affect the decision about whether [Plaintiff was] disabled beginning on or before September 12, 2018," the date of the ALJ's decision. *Id.* Plaintiff has not argued that the Appeals Council erred in this respect, nor has the Court found any error. *See* 20 C.F.R. §§ 404.970 & 416.1470 (describing the circumstances warranting Appeals Council review of an ALJ decision, what type of additional evidence will be considered, and the notice the Appeals Council must provide to the claimant explaining why the additional evidence was not accepted).

Having determined that neither the ALJ nor the Appeals Council erred by not considering the medical evidence of the July 12, 2019 office visit to Dr. Kafchinski, the remainder of the medical evidence cited by Plaintiff in support of this argument is that Plaintiff was on a pain management plan that included "hydrocodone-acetaminophen 5-325 mg tablet every six hours" in August 2015; and that on January 23, 2018, "Dr. Molina Paredes, in consultation with neurologist Dr. Cowens, noted the claimant's history of chronic low back pain." (Pl.'s Br., ECF No. 20, at 3). After discounting the arguments Plaintiff makes in relation to the office visit to Dr. Kafchinski, the Plaintiff offers no further explanation as to the significance of these two references in support of her arguments on appeal.

In his written decision, the ALJ expressly discussed the August 2015 examination with Dr. Brian August that indicated several back-related diagnoses as well as being prescribed hydrocodone. (R. 92). Although the ALJ did not specifically discuss the notation of Plaintiff's "history of chronic low back pain" at the January 23, 2018 examination with Dr. Molina Paredes, a review of the record from that visit does not support Plaintiff's argument. While a history of chronic low back pain was noted in the record of this visit, the remainder of the record does not indicate a discussion, diagnosis, or treatment plan for back pain or back-related diagnoses. *See* (R. 1676–78). Furthermore, the ALJ acknowledged that the medical evidence documents Plaintiff's history of cervical and lumbar degenerative disc disease, *inter alia*, but concluded that it is "inconsistent with [Plaintiff's] allegations of disability, as it fails to substantiate limitations to the degree that [Plaintiff] asserts or to document a level of functional restriction incompatible with sustained work activity." (R. 92). Along with a discussion of Plaintiff's self-reported daily activities, the ALJ discussed Plaintiff's medical history involving Plaintiff's spine diagnoses and lower back pain. *See* (R. 91–93).

Plaintiff has not cited any further medical records supporting her argument that the ALJ failed to consider her chronic back pain, tricompartmental osteoarthritis of the bilateral knees, or mild arthritis of the bilateral hips. Accordingly, her argument in this respect is unavailing.

2. *Whether the ALJ improperly rejected medical opinions of treating and examining physicians*

Second, Plaintiff argues that "the ALJ rejected the medical opinions of treating and examining doctors alike about the severity of [Plaintiff]'s medical conditions without contradictory evidence from a medical expert of any kind." (Pl.'s Br., ECF No. 20, at 4–6). In response, the Commissioner claims that the Appeals Council granted review in this case to address the opinion of Dr. Perez-Ceballos and "properly assigned it little weight because it was inconsistent with the weight of the evidence." (Comm'r's Br., ECF No. 22, at 7). The Commissioner further claims that "Plaintiff has not referenced any other treating or examining physicians that the ALJ purportedly ignored . . . ." *Id.*

When determining disability, the ALJ will consider medical opinions from acceptable medical sources, including treating physicians, together with the rest of the relevant evidence in the record. 20 C.F.R. §§ 404.1527(a)–(b) & 416.927(a)–(b). A "treating source's medical opinion on the issue(s) of the nature and severity of [a claimant's] impairment(s)" will be given controlling weight if the ALJ finds that it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record." *Id.* at §§ 404.1527(c)(2) & 416.927(c)(2). When a treating source's medical opinion is not given controlling weight, the ALJ applies the factors listed in paragraphs (c)(2)(i)–(ii) and (c)(3)–(c)(6) of 20 C.F.R. §§ 404.1527 and 416.927 in determining what weight to give the opinions and provides "good reasons" for the weight given. *Id.* at §§ 404.1527(c)(2) & 416.927(c)(2).

"[A]bsent reliable medical evidence from a treating or examining physician controverting the claimant's treating specialist, an ALJ may reject the opinion of the treating physician *only* if the ALJ performs a detailed analysis of the treating physician's views, under the criteria set forth in 20 C.F.R. § 404.1527(d)(2)."[5] *Newton*, 209 F.3d at 453 (emphasis in original); s*ee also Qualls v. Astrue*, 339 F. App'x 461, 467 (5th Cir. 2009) ("The *Newton* court limited its holding to cases where the ALJ rejects the sole relevant medical opinion before it."). These factors include the frequency of examination and length, nature, and extent of the treatment relationship; the supportability of the opinion; the consistency of the opinion with the record as a whole; specialization of the physician; and other factors, such as the medical source's understanding of disability programs and evidentiary requirements and the extent to which the medical source is familiar with the other information in the claimant's case record. 20 C.F.R. §§ 404.1527(c) & 416.927(c).

Plaintiff does not identify which opinions from treating or examining doctors she claims the ALJ rejected, does not mention the name of a doctor who has provided an opinion, and does not identify evidence in the record to support an argument that an opinion was erroneously rejected. In an attempt to infer the context, however, the Court notes that Plaintiff's argument in this respect immediately follows her argument relating to the July 12, 2019 office visit with Dr. Kafchinski. *See* (Pl.'s Br., ECF No. 20, at 3–6). To the extent Plaintiff is arguing that the ALJ disregarded the opinions of Dr. Kafchinski in the medical records of the July 12, 2019 office visit,[6] such an argument is unavailing because, as discussed above, the records were not in existence at the time

---

[5] The criteria that the Fifth Circuit references at subsection (d)(2) in *Newton* are currently located at subsection (c)(2)(i)–(ii) and (c)(3)–(c)(6) of §§ 404.1527 and 416.927. *Compare* 20 C.F.R. §§ 404.1527 & 416.927 (effective July 31, 2006) *with* 20 C.F.R. §§ 404.1527 & 416.927 (effective Aug. 24, 2012 to Mar. 26, 2017) *and* 20 C.F.R. §§ 404.1527 & 416.927 (effective Mar. 27, 2017).

[6] In fact, Plaintiff has not cited an opinion from Dr. Kafchinski, nor has the Court found one in the record.

of the ALJ's decision and, therefore, neither the ALJ nor the Appeals Council erred by not considering them.

In fact, the only referenced opinion evidence from an examining or treating physician relating to Plaintiff's physical limitations is from Sanlly Perez-Ceballos, M.D. It is true that the ALJ failed to include an assessment of the opinions of Dr. Perez-Ceballos in his written decision. *See* (R. 90–95). However, the Appeals Council granted review of the ALJ's decision in this case specifically because "the [ALJ] did not address the medical opinion provided by Sanlly Perez-Ceballos, M.D.," who completed a physical medical source statement on February 15, 2018. (R. 324–25). As the Commissioner notes, Plaintiff has not alleged error in the Appeals Council's assessment of the opinions of Dr. Perez-Ceballos. *See* (Comm'r's Br., ECF No. 22, at 4); (Pl.'s Br., ECF No. 20, at 4–6) (arguing only that the ALJ erred). However, even were Plaintiff to have alleged that the Appeals Council erred in this respect, Plaintiff has made no specific argument and cited no evidence to support an allegation of error. Nevertheless, a review of the record reveals no error.

The Appeals Council, on review, adopted the reasonings and conclusions of the ALJ but also explicitly considered the opinions of Dr. Perez-Ceballos. (R. 4–7). Dr. Perez-Ceballos proposed limitations consistent with a less-than-sedentary RFC, including not being able to lift or carry; being able to sit for one hour, stand for twenty minutes, and walk for ten minutes in an eight-hour workday; and never being able to reach overhead and all other directions. (R. 5, 1543–48). After setting forth the limitations opined by Dr. Perez-Ceballos, the Appeals Council stated that "the evidence of record does not support Dr. Perez-Ceballos' [sic] proposed limitations." (R. 5).

The Appeals Council then considered the results of an electromyography examination on July 20, 2017, and cervical and lumbar magnetic resonance imagings ("MRIs") on February 11,

2018, the findings of which were characterized as no more than mild or moderate. (R. 5–6) (citing R. 1376, 1536–37, 1540–41). The Appeals Council also cited treatment notes dated January 23, 2018, indicating "unremarkable CTA of the head and neck and MRI of the brain unremarkable." (R. 6) (citing R. 1677–78). The Appeals Council also noted a "normal" "cardio exam" on February 28, 2018. (R. 6) (citing R. 1863–64). The Appeals Council further determined that Plaintiff's November 11, 2016, Function Report "does not indicate any significant deficits in personal-care abilities and performing activities of daily living." (R. 6) (citing R. 387–94). Thus, the Appeals Council concluded that the treatment history and reported daily activities do not "support the limitations proposed by Dr. Perez-Ceballos." (R. 6). Accordingly, the Appeals Council afforded the opinions of Dr. Perez-Ceballos little weight, citing 20 C.F.R. §§ 404.1527(d) and 416.927(d).[7] (R. 6).

The Court is of the opinion that such an analysis provides specific reasons that satisfy the regulatory requirement to provide good reasons for the weight given the opinion of a treating physician. *See* 20 C.F.R. §§ 404.1527(c)(2) & 416.927(c)(2). Plaintiff does not refute or cite evidence contradicting these reasons. Moreover, the record demonstrates reliable medical evidence from treating or examining physicians that controvert the opinions of Dr. Perez-Ceballos.

The ALJ discussed MRI results from June 2015, reviewed by Dr. Kiron Master, which "showed disc bulging at L5-S1 with disc desiccation and disc-height loss, as well as bilateral neuroforaminal narrowing with mild bilateral exiting nerve-root impingement. However, the examination showed no significant spinal stenosis and revealed 'normal' findings regarding levels L1-2 through L4-5." (R. 92) (citing R. 938). The ALJ also considered the record of Plaintiff's August 2015 consultative follow up appointment noting that Plaintiff had "paraspinal tenderness

---

[7] *See* fn 4, *supra*.

and tenderness of the lower back but was able to flex forward at the waist. She had decreased strength on the left and ataxic gait but had normal range of neck and shoulder motion and normal sensation." (R. 92) (citing R. 940). The ALJ noted that Plaintiff was diagnosed with, inter alia, lumbosacral root lesions, low-back pain, and displaced lumbosacral disc and was prescribed hydrocodone. (R. 92) (citing R. 940).

However, a physical examination in January 2016[8] showed that Plaintiff had normal gait and normal muscle strength and tone. (R. 92) (citing R. 753). Furthermore, at both the January 2016 appointment and a follow up examination in March 2016, hydrocodone was not recorded in her list of current medications, nor were the lumbosacral root lesions, low-back pain, and displaced lumbosacral disc listed in the list of current problems. (R. 716–17; 750–51).

Finally, as did the Appeals Council, the ALJ considered the results of a lumbar MRI from February 2018, particularly noting that the MRI showed "annular fissure at L5-S1 and degenerative disc disease at L5-S1 resulting in only 'mild' foraminal narrowing." (R. 93) (citing R. 1540). Though not specifically mentioned by the ALJ, the report described the annular fissure as possibly being "clinically asymptomatic." (R. 1541).

The Commissioner, likewise, has cited multiple records during the relevant time period where the doctors have noted on physical examination that Plaintiff had a normal gait, *see* (R. 547, 891, 1283, 1511), and had normal strength, *see* (R. 541, 870, 891, 1283, 1511). (Comm'r's Br., ECF No. 22, at 6).

Accordingly, the Court is of the opinion that the Appeals Council did not err in its assessment of the opinions of Dr. Perez-Ceballos, and further, that the medical record evidence just described demonstrates that the ALJ's RFC assessment, as adopted by the Appeal's Council,

---

[8] The ALJ stated that this examination was in February 2016, but the record to which he cites, and which corroborates the information he attributes to the record, provides that the examination date was actually January 25, 2016. (R. 753).

is based on substantial evidence. Therefore, the Court finds that Plaintiff has not shown in her first point of alleged error that the ALJ erred either by disregarding medical evidence of comorbidities or by improperly rejecting medical opinions of treating and examining physicians.

E. WHETHER THE ALJ ERRED IN DISMISSING PLAINTIFF'S MAJOR DEPRESSIVE DISORDER ON AN IMPROPER BASIS

Plaintiff argues that the ALJ improperly dismissed her major depressive disorder when he assessed that Plaintiff's demeanor at the hearing did not support her allegation of depression. (Pl.'s Br., ECF No. 20, at 7) (citing R. 91). The Commissioner argues that the ALJ applied the proper legal standards in his discussion of the medical evidence and his assessment of the RFC. (Comm'r's Br., ECF No. 22, at 8–9). The Commissioner further argues that "the Fifth Circuit has expressly permitted the observation of hearing demeanor as a factor in the symptom evaluation." *Id.* at 9 (citing *Villa v. Sullivan*, 895 F.2d 1019, at 1024 (5th Cir. 1990)).

At step two, the ALJ determined that Plaintiff's major depressive disorder was a severe impairment. (R. 86). In assessing mental limitations to include in Plaintiff's RFC, the ALJ considered Plaintiff's subjective complaints, her demeanor at the hearing, medical record evidence, and medical source opinions in determining non-exertional limitations including that Plaintiff "can understand, remember, and carry out detailed but not complex job instructions and work-related tasks; and she can occasionally interact with the general public." (R. 90–92, 93–95). Significantly, the ALJ also noted that Plaintiff had not asserted in her application that depression was a condition that limited her ability to work. (R. 91–92). The ALJ further noted that although Plaintiff reported "significantly diminished social activities due to chronic tiredness and a dis-inclination to being around other people," Plaintiff also reported maintaining close relationships and regular contact with a number of family members and friends. (R. 91–92). In addition to these observations, the ALJ further assessed the Plaintiff's demeanor at the hearing and concluded that

it does not support a finding of disabling depression. (R. 91–92). "[I]t is not reversible error for an ALJ to consider demeanor as one of several factors in evaluating a claimant's credibility . . . ." *Villa*, 895 F.2d at 1024. Because the ALJ considered other evidence in making his credibility assessment, the ALJ did not err on this basis.

However, even if it were somehow to be considered error, Plaintiff has not shown that such error is prejudicial. Plaintiff makes no specific arguments that contradict the ALJ's RFC assessment regarding her major depressive disorder. Instead, Plaintiff asserts that the medical evidence supports a diagnosis of major depressive disorder, generally citing medical records without explanation. (Pl.'s Br., ECF No. 20, at 6–7). This argument is inapposite, however, as the existence of Plaintiff's major depressive disorder is not disputed. (R. 86) (determining at step two that Plaintiff's major depressive disorder was a medically determinable, severe impairment). Moreover, in his written decision, the ALJ discussed several mental status examinations demonstrating anxious, angry, and/or dysphoric moods and flat and blunted affect but otherwise "essentially normal findings." (R. 93–94) (citing R. 1075–76, 1085–86, 1181–82, 1190–91, 1432). The ALJ also discussed the findings of Randall Rattan, Ph.D. who conducted a consultative psychological evaluation, summarizing that Plaintiff "showed average remote memory, intact immediate memory, and fair delayed memory, as well as average attention, concentration, and abstraction ability, … good insights, and no deficits of judgment." (R. 94) (citing 1066–67). Accordingly, the Court finds no cause to remand based on Plaintiff's argument that the ALJ "dismiss[ed Plaintiff's] major depressive disorder on an improper basis." *See* (Pl.'s Br., ECF No. 20, at 6).

F.  WHETHER THE ALJ ERRED IN HIS CHARACTERIZATION OF PLAINTIFF'S DEGENERATIVE DISC DISEASE AS ONLY 'MILD'

Finally, Plaintiff asserts that the ALJ erred by characterizing her degenerative disc disease

as only "mild." (Pl.'s Br., ECF No. 20, at 7–8). Plaintiff provides no citation to the ALJ's written decision but, based on her brief argument that "a more serious nerve impingement would require likely [sic] lead to a Step Three analysis of presumptive disability under 20 CFR Part 404," *id.* at 8, the Court surmises that Plaintiff takes issue with the ALJ's step two assessment that her cervical and lumbar degenerative disc disease are "severe in combination only." *See* (R. 86). However, Plaintiff has provided no evidence or record citations to direct the Court to the alleged mischaracterization of an underlying medical record from which the Court could evaluate Plaintiff's argument. Furthermore, the ALJ did consider Plaintiff's spine disorders at step three under paragraph 1.04 of 20 C.F.R. Part 404, Subpart P, Appendix 1, concluding that the several criteria that must be established continuously for a twelve-month period were not present in the record. (R. 87–88). Plaintiff does not refer the Court to any evidence suggesting otherwise. Accordingly, Plaintiff has not demonstrated that the ALJ erred in this respect, nor has Plaintiff demonstrated that any such error would be prejudicial.

### III.     CONCLUSION

For the foregoing reasons,

**IT IS ORDERED** that the decision of the Commissioner will be **AFFIRMED**.

**SIGNED** and **ENTERED** this 23rd day of March, 2021.

MIGUEL A. TORRES
UNITED STATES MAGISTRATE JUDGE